UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

JOYCE G.  WILLIAMS,

        Plaintiff,

vs.                                     Case No.  3:06-cv-92-J-32MCR

JO ANNE B. BARNHART, Commissioner of
Social Security,

        Defendant.
_____/

## MEMORANDUM OPINION AND ORDER[1]

This cause is before the Court on Plaintiff's appeal of an administrative decision denying her application for Social Security benefits.  The Court has reviewed the record, the briefs and the applicable law.  For the reasons set forth herein, the Commissioner's decision is **REVERSED** and **REMANDED** for proceedings not inconsistent with this opinion.

## I.     PROCEDURAL HISTORY

Plaintiff filed an application for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") on March 5, 2004, alleging an inability to work since December 27, 2003.  (Tr. 97-99, 272-74).  The Social Security Administration ("SSA") denied this application initially and on reconsideration.  (Tr. 80-90, 275-82).  Plaintiff subsequently filed a timely request for a hearing on the matter.  (Tr. 91-92).

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. (Doc. 9).

Plaintiff's request was granted and a hearing was conducting by an Administrative Law

Judge (the "ALJ") on March 2, 2005.  (Tr. 27-73).  On June 23, 2005, the ALJ issued a

decision finding Plaintiff was not disabled.  (Tr. 18-26).  Plaintiff filed a Request for

Review by the Appeals Council which was denied on November 29, 2005.  (Tr. 7-9).

Plaintiff timely filed a Complaint in the U.S. District Court on January 31, 2006.  (Doc. 1).

## II.    NATURE OF DISABILITY CLAIM

### A.    Basis of Claimed Disability

Plaintiff claims to be disabled since December 27, 2003, due to arthritis in her

lower back and knees, carpal tunnel syndrom ("CTS") in both hands, and bladder

problems.  (Tr. 18).

### B.    Summary of Evidence Before the ALJ

Plaintiff was fifty-three years of age on the date the ALJ's decision was issued.

(Tr. 18).  Plaintiff's past relevant work experience includes being a driver, laborer, lab

assistant, and dormitory counselor.  Id.  Plaintiff was insured for disability benefits

through June 2005.  (Tr. 19, 25).  Plaintiff's medical history is set forth in the record.  By

way of summary,[2] on February 11, 2004, Plaintiff reported to Dr. Kimm Layland

"occasional numbness" in her hands and she was diagnosed with "paresthesias" in

both hands.  (Tr. 159).  At that visit, Dr. Layland gave Plaintiff right and left wrist splints.

Id.  On April 22, 2004, Plaintiff was examined by Dr. Michael Pulley, a neurologist.  (Tr.

197).  Plaintiff reported "sensory disturbance" in three digits of her right hand and all

digits of her left hand.  Id.  Plaintiff also reported to Dr. Pulley "weakness" and

_____

[2] This summary is limited to the evidence relevant to the issues on appeal.

"numbness" in her right hand and that she "drops items."  Id.  Dr. Pulley's records indicate that Plaintiff had "marked flattening of her thenar eminence on the right greater than the left."  (Tr. 198).  Dr. Pulley also noted that "light touch was reduced" in the second digit of Plaintiff's right hand and in the first, second, and third digits of the left hand and "pinprick was reduced" in the first, second, and third digits of both hands.  Id. EMG studies revealed "bilateral median nerve entrapments at the wrists . . . graded mild to moderate in severity."  Id.  Dr. Pulley noted Plaintff seemed to have "fairly prominent weakness on exam."  Id.

On May 10, 2004, Dr. Josephino Bargas, a Medical Disability Examiner, examined Plaintiff.  (Tr. 178-87).  Plaintiff reported to Dr. Bargas that her hands get stiff and painful when lifting and writing and that she has problems with her grip.  (Tr. 178). Dr. Bargas' notes indicate "no muscle atrophy; no joint swelling and . . . no deformities" in Plaintiff's hand and fingers.  (Tr. 182).  Dr. Bargas reported that Plaintiff could lift twelve pounds with her right hand and eleven pounds with her left hand and that she had no difficulty opening and closing bottles and jars.  (Tr. 182-83).  Dr. Bargas also noted "no thenar and hypothenar atrophy."  (Tr. 183).

Plaintiff saw Dr. Layland again on June 17, 2004 and reported "dizziness" when she stood up, which she described as feeling as though the "room [was ] spinning."  (Tr. 210).

On June 24, 2004, Plaintiff was examined by Dr. Kaveh Barami, a neurosurgeon. (Tr. 195-96).  Plaintiff reported bilateral hand pain which "occurs mostly in the base of the thumb with radiation to the wrist, worse on the right side" and numbness at the tips

of her fingers.  (Tr. 195).  Dr. Barami noted that Plaintiff had been "dropping objects from both hands" and that she "has lost fine motor skills bilaterally."  Id.  Dr. Barami reported that Plaintiff had "positive thenar atrophy bilaterally" as well as decreased sensation on her right thumb and forefinger and left thumb, forefinger, and middle finger.  Id.  Plaintiff was diagnosed with "carpal tunnel syndrome, worse on the right side" and Dr. Barami recommended a right-sided carpal tunnel decompression.  (Tr. 196).

On July 9, 2004, Dr. Barami performed a right carpal tunnel decompression.  (Tr. 193).  Plaintiff followed up with Dr. Layland on July 16, 2004 and Dr. Layland noted Plaintiff was "doing well" post-surgery.  (Tr. 204).  On September 1, 2004, Plaintiff saw Dr. Layland again and Dr. Layland's notes indicate that Plaintiff had a "wound infection" but that her right wrist "surgical wound" was healing well.  (Tr. 200).

An administrative hearing was held on March 2, 2005.  (Tr. 27-73).  At the hearing, Plaintiff testified that before the surgery she could not grip anything with her right hand and that after having the surgery, she was still unable to grip anything, but she was able to move her fingers better than she was able to prior to the surgery.  (Tr. 44).  Plaintiff also testified that prior to having the surgery, the pain and numbness in her right hand was an "eight" on a scale of one to ten, and that at the time of the hearing, it was a "five."  Id.  Further, Plaintiff testified that she had a cyst on her left hand and that she was not willing to have surgery on her left hand to have the cyst removed until her right hand was healed.  Id.

On April 25, 2005, Plaintiff submitted a report from Dr. Barami dated March 16, 2005.  (Tr. 284).  The letter from Plaintiff's counsel was marked as received by the ALJ on April 26, 2005.  Id.  In the report, Dr. Barami noted that although Plaintiff's incision had healed, she was still unable to open the third, fourth, and fifth digits of her right hand occassionally and she had pain at the base of her thumb.  (Tr. 283).  Dr. Barami referred Plaintiff to an orthopedic surgeon for further evaluation of her right hand and he also noted that she had a "ganglion cyst involving the left wrist."  Id.

C.    **Summary of the ALJ's Decision**

A plaintiff is entitled to disability benefits when she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than 12 months.  42 U.S.C. §§ 416(I), 423(d)(1)(A); 20 C.F.R. § 404.1505.  The ALJ must follow five steps in evaluating a claim of disability.  See 20 C.F.R. §§ 404.1520, 416.920.  First, if a claimant is working at a substantial gainful activity, she is not disabled.  29 C.F.R. § 404.1520(b).  Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled.  20 C.F.R. § 404.1520(c).  Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled.  20 C.F.R. § 404.1520(d).  Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled.  20 C.F.R. § 404.1520(e).  Fifth, if a claimant's impairments (considering his residual functional capacity, age, education,

and past work) prevent her from doing other work that exists in the national economy, then she is disabled.  20 C.F.R. § 404.1520(f).  Plaintiff bears the burden of persuasion through step four, while at step five, the burden shifts to the Commissioner.  Bowen v. Yuckert, 482 U.S. 137, 146, 107 S.Ct. 2287 n.5 (1987).

In the instant case, the ALJ determined Plaintiff met the nondisability requirements of the Social Security Act and was insured for benefits through the date of the decision.  (Tr. 19, 25).  At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since her alleged onset date of December 27, 2003.  Id.  The ALJ determined at step two that Plaintiff's "CTS, osteoarthritis in the knees, and depression" were severe impairments based on the requirements in 20 CFR § § 404.1520(c) and 416.920(c).  (Tr. 19, 25).  At step three, however, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4.  (Tr. 21, 25).

Next, the ALJ determined Plaintiff retained the residual functional capacity to "occasionally lift 20 pounds and frequently lift 10 pounds.  She is able to stand, walk or sit for 6 hours in an 8-hour workday; she should be able to sit/stand as needed for comfort.  She has limited use of the right upper extremity due to CTS." (Tr. 23).  The ALJ further determined Plaintiff's depression "does not cause any significant work-related functional limitations."  Id.  In making the determination of residual functional capacity, the ALJ found Plaintiff's testimony regarding her own limitations "not very credible."  Id.  At step four, the ALJ found Plaintiff was unable to perform past relevant

work.  (Tr. 24, 25).  Finally, at step five, based on the testimony of a vocational expert, the ALJ determined work which Plaintiff was capable of performing existed in significant numbers in the national economy.  (Tr. 24).  Accordingly, the ALJ held Plaintiff was not disabled within the meaning of the Social Security Act.  (Tr. 24, 26).

### D.   <u>Evidence Presented to the Appeals Council</u>

After the ALJ issued the decision, Plaintiff filed a Request for Review of Hearing Decision/Order on August 15, 2005.  (Tr. 11-14).  Subsequently, on October 7, 2005, Plaintiff submitted new evidence to the Appeals Council.  (Tr. 286).  This new evidence consisted of records from Dr. Anna Gadja dated from December 9, 2004 to August 11, 2005 as well as a Treating Source Mental Health Report dated September 9, 2005.  (Tr. 286-97).  A record dated January 31, 2005 indicates Plaintiff was still complaining of tingling and numbness in both hands and pain in her right hand.  (Tr. 294).  On March 17, 2005, Plaintiff reported she fell down two days earlier because she lost her balance. (Tr. 292).  The record dated July 28, 2005 indicates that this appointment was a follow-up to a hospitalization two weeks earlier due to an episode of syncope.  (Tr. 290).  The record also indicates that Plaintiff denied any episodes of syncope from the time of her hospitalization until the date of this visit but that she felt dizziness when changing positions from sitting to standing.  <u>Id.</u>  Plaintiff was diagnosed with "dizziness/vertigo" and an EEG was ordered.  <u>Id.</u>  On August 11, 2005, Plaintiff reported "occasional dizziness."  (Tr. 289).

### III.  ANALYSIS

#### A.  The Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence.  Richardson v. Perales, 402 U.S. 389, 390, 91 S.Ct. 1420 (1971).  The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.  Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).  The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  Foote, 67 F.3d at 1560; accord, Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

**B.** **Issues on Appeal**

Plaintiff argues several issues on appeal.  First, Plaintiff argues the ALJ erred in

failing to properly evaluate Plaintiff's left hand impairment and in failing to make specific

findings regarding the limitations in Plaintiff's right hand.  (Doc. 11, pp. 9-15).  Second,

Plaintiff asserts the ALJ committed error in failing to credit Plaintiff's claim of dizziness

as a significant limitation.  (Doc. 11, pp. 15-17).  Finally, Plaintiff claims the Appeals

Council erred in not remanding Plaintiff's claim for benefits to the ALJ upon receipt of

evidence Plaintiff submitted to the Appeals Council after the ALJ issued the decision.

(Doc. 11, pp. 17-19).  The Court will address each of these arguments.

  **1.**   **Whether the ALJ erred in failing to evaluate Plaintiff's left hand**
     **impairment and in minimizing the limitations in Plaintiff's right**
     **hand**

Plaintiff asserts the ALJ improperly failed to consider the effects of CTS in her left

hand, either individually or in combination with Plaintiff's other impairments, when

determining her ability to perform work.  (Doc. 11, p. 12).  Specifically, Plaintiff contends

the ALJ erred in failing to make any findings of fact regarding limitations in Plaintiff's left

hand due to the CTS and ganglion cyst despite the EMG findings and the diagnosis of

bilateral CTS.  (Doc. 11, p. 14).   Regarding Plaintiff's right hand, Plaintiff argues the

ALJ improperly minimized the extent of Plaintiff's limitations and erroneously failed to

make specific findings as to the "limited use" of her right hand.  (Doc. 11, pp. 14-15).  In

response, the Commissioner argues the ALJ did not err in failing to consider any left

hand limitations or failing to make specific findings regarding Plaintiff's right hand

limitations because the vocational expert identified jobs requiring little to no use of the

hands and substantial evidence supports the ALJ's finding that Plaintiff could perform these jobs.  (Doc. 12, pp. 4-5).

### a.  Plaintiff's left hand

Plaintiff argues the ALJ improperly failed to find Plaintiff's left hand impairment, either singly or in combination with her other impairments, was a "severe" impairment at step two of the analysis.  (Doc. 11, p. 12).  Further, Plaintiff argues the ALJ improperly failed to consider the effect of Plaintiff's left hand, either individually or in combination with her other impairments.  Id.

While it is not necessarily error for an ALJ to fail to include a specific impairment in the step two analysis (so long as a severe impairment is found and the sequential analysis is continued), the failure to address the severity of a specific impairment is reversible error where the record does not reveal the extent to which the impairment was considered at subsequent steps in the sequential evaluation.  Maziarz v. Secretary of Health and Human Services, 837 F.2d 240, 244 (6th Cir. 1987) (holding ALJ's failure to find plaintiff's cervical condition constituted severe impairment was not error because ALJ found other conditions were severe impairments and continued with the remaining steps in his disability determination); Williams v. Barnhart, 186 F.Supp.2d 1192, 1197-98 (M.D. Ala. 2002) (holding ALJ's failure to discuss impairments in subsequent steps after step two was error).

In the instant case, at step two, the ALJ found Plaintiff's severe impairments included CTS, but the ALJ did not specify whether he found the CTS was a severe

impairment in the left hand, the right hand, or both. (Tr. 19, 25). After finding Plaintiff

had severe impairments, the ALJ continued with the sequential analysis. (Tr. 20-26).

The ALJ's failure to specifically find Plaintiff's left hand CTS constituted a severe

impairment was not necessarily error since the ALJ found other severe impairments,

including CTS, and continued the sequential analysis. In continuing the sequential

analysis, however, the ALJ failed to discuss the effect of Plaintiff's left hand impairment,

either individually or in combination with Plaintiff's other impairments.

Remand is required when an ALJ fails to consider a claimant's condition despite

evidence in the record of the diagnosis. Vega v. Commissioner of Social Security, 265

F.3d 1214, 1219 (11th Cir. 2001). Further, the ALJ is required to "evaluate the

combination of a claimant's impairments with respect to the effect they have on the

ability to fulfill the duties of his or her past work or other work." Lucas v. Sullivan, 918

F.2d 1567, 1574 (11th Cir. 1990). The ALJ is required to "make specific and well-

articulated findings as to the effect of the combination of impairments and to decide

whether the combined impairments cause the claimant to be disabled." Walker v.

Bowen, 826 F.2d 996, 1001 (11th Cir. 1987).

In the instant case, there was evidence in the record that Plaintiff had an

impairment in her left hand, including left hand CTS and a ganglion cyst in her left wrist.

On April 22, 2004, Dr. Pulley noted "marked flattening of her thenar eminence" on the

right greater than the left and "light touch" and "pinprick" were "reduced" in the first,

second, and third digits of Plaintiff's left hand. (Tr. 198). On that same date, Dr. Pulley

also reported the results of a Needle EMG, which indicated "bilateral median nerve

entrapments at the wrist." Id.   On June 24, 2004, Dr. Barami's records indicate that Plaintiff had "been dropping objects from both hands" and that she had "lost fine motor skills bilaterally." (Tr. 195).  Dr. Barami's impression on that date was "carpal tunnel syndrome, worse on the right side." (Tr. 196).  On March 16, 2005, Dr. Barami noted that Plaintiff had a "ganglion cyst involving the left wrist." (Tr. 283).[3]

Although the ALJ was required to evaluate the effect of Plaintiff's left hand impairment in combination with her other impairments on her ability to work, the ALJ did not mention any limitations resulting from Plaintiff's left hand impairment.  In determining Plaintiff's residual functional capacity, the ALJ found Plaintiff had "limited use of the right upper extremity due to CTS." (Tr. 23).  However, the ALJ did not discuss whether Plaintiff had any limitations in her left hand, nor did the ALJ consider any effects of Plaintiff's left hand impairment in combination with Plaintiff's other impairments on her ability to perform work.  (Tr. 23).

At step four of the analysis, the ALJ considered the vocational expert's ("VE's") testimony that, based on Plaintiff's RFC including limited use of the right hand, Plaintiff could perform her past job of Case Aide, which was the dormitory counselor position. (Tr. 24).   Although the ALJ did not consider any limitations in Plaintiff's left hand in determining Plaintiff's RFC, the ALJ determined Plaintiff could not perform any past relevant work because the Case Aide position may require the use of both hands.  (Tr. 24).  This conclusion suggests that the ALJ took into account limitations in Plaintiff's left

---

[3] Dr. Barami's report dated March 16, 2005 was submitted to the ALJ on April 25, 2005, which was after the hearing on March 2, 2006 but before the ALJ issued the decision.

hand in determining Plaintiff's inability to perform past relevant work even though the ALJ did not evaluate or discuss Plaintiff's left hand impairment when determining her RFC.

The Commissioner contends the ALJ did not err in "finding no limitations in Plaintiff's left hand and 'limited use' of the right hand" because the VE identified jobs that required very little to no use of the hands and because substantial evidence supports the ALJ's decision that "Plaintiff could perform these jobs." (Doc. 12, p. 5). The Commissioner is apparently referring to the VE's testimony in which the VE identified the surveillance monitor position as one that requires use of the hands up to ten percent of the time.  (Tr. 68).  This was the only position that the VE identified as requiring little use of both hands.  (Tr. 66-70).

The Commissioner's argument is faulty for two reasons.  First, the ALJ did not make a finding of "no limitations" in Plaintiff's left hand.  Rather, the ALJ failed to consider any left hand limitations at all.  Secondly, at step five, the ALJ asked the VE if a hypothetical individual with Plaintiff's background and RFC including "specifically the limited use of one hand" could perform any other jobs existing in significant numbers in the national economy.  (Tr. 24).  The VE identified three jobs that Plaintiff could perform considering the Plaintiff's RFC.  Based on these three jobs, the ALJ determined Plaintiff could perform work that exists in significant numbers in the national economy. Id.  The ALJ's determination was based on the VE's testimony that a person with Plaintiff's RFC, specifically the limited use of *one* hand, could perform these jobs.  This determination

-13-

did not take into account any limitations in Plaintiff's left hand, or the effect of any left hand impairments combined with the limited use of the right hand.

The VE's identification of one job that a person could perform with little use of the hands is irrelevant because the ALJ considered all three jobs in determining work that Plaintiff could perform exists in significant numbers in the national economy.  Further, the fact that the VE identified a job requiring use of the hands less than ten percent of the time does not vitiate the requirement that the ALJ must consider the effect of all impairments, both individually and in conjunction with the other impairments to determine a Plaintiff's RFC.  Since the ALJ did not evaluate Plaintiff's left hand impairment or make findings regarding her left hand limitations alone and in combination with her other limitations, it remains unclear whether Plaintiff could perform this job.  Thus, even if there was substantial evidence that Plaintiff could perform this job, as the Commissioner contends, the ALJ did not use that evidence to make a finding.  Rather, the ALJ failed to evaluate Plaintiff's left hand impairment entirely and did not make any findings at all regarding whether Plaintiff did or did not have limitations due to her left hand impairment.

The ALJ erred in failing to evaluate the effect of Plaintiff's left hand impairment, both individually and in combination with her other impairments.  The ALJ did not discuss Plaintiff's left hand condition at all and did not consider the effect of the left hand impairment combined with Plaintiff's other impairments.  Considering Plaintiff's right hand impairment, it is especially important to consider any limitations in Plaintiff's left hand in combination with her right hand limitation in determining whether she is

-14-

disabled.  On remand, the ALJ is instructed to evaluate Plaintiff's left hand impairment

and the limitations caused by her left hand impairment, both individually and in

combination with her other impairments, especially the right hand CTS and to make

specific findings as to her limitations.

### b.    Plaintiff's right hand

Plaintiff argues the ALJ improperly minimized the limitations in Plaintiff's right

hand and failed to make specific findings regarding the "limited use" of her right hand.

(Doc. 11 p. 14).  In his opinion, the ALJ stated "by September 1, 2004, the claimant was

reportedly normal and healing well."  (Tr. 20).  The ALJ goes on to state that "records

received and admitted during the hearing . . . indicate that the claimant had significant

improvement in pain and numbness in her right hand after the surgery."  Id.  Further, at

step four of his analysis, the ALJ reasoned "[t]he claimant testified she still had

numerous problems with her right hand, but this is contrary to the medical records which

reported significant improvements and normal."  (Tr. 23).  In determining Plaintiff's RFC,

the ALJ found Plaintiff had "limited use" of her right hand due to CTS.  Id.

The ALJ seems to have misread the medical records to which he referred.  The

medical record which the ALJ cited, dated September 1, 2005, states that Plaintiff had

been placed on medication due to a "wound infection" and that her right wrist "surgical

wound [was] healing well."  (Tr. 200).  The ALJ apparently misread the word "wound" as

"normal" and reached the conclusion that Plaintiff was now "normal" and "healing well."[4]

---

[4] The undersigned acknowledges that the handwriting on the medical records is somewhat difficult to decipher, but upon a close reading of the record, it is apparent that the medical personnel was reporting on the status of the Plaintiff's recent wound infection.  (Tr. 200).  The word "normal"
(continued...)

The fact that Plantiff's wound was healing well does not lead to the conclusion that Plaintiff no longer had any limitations in her right hand.  In fact, evidence in the record indicates that Plaintiff was still experiencing problems with her right hand post-surgery.

The ALJ referred to "records received and admitted during the hearing (see representative's faxed letter dated March 2, 2005)."  (Tr. 20).  The only letter in the record from Plaintiff's counsel to the ALJ was dated April 25, 2005 and stamped as received by the ALJ on April 26, 2005, which was almost two months prior to the date the ALJ issued the decision.[5]  (Tr. 284).  As there are no other letters in the record from Plaintiff's counsel to the ALJ dated between the time of the hearing and the date the ALJ issued the decision, the undersigned can only assume that the ALJ is referring to this letter and accompanying record dated March 16, 2005.  (Tr. 283-84).  The ALJ stated that this record indicated Plaintiff had "significant improvement in pain and numbness in her right hand after the surgery."  (Tr. 20).  The record, however, does not indicate such progress.  (Tr. 283).  Rather, the record states that Plaintiff "complain[ed] of inability to open the 3rd, 4th, and 5th digits on the right side occassionally.  Also, she complain[ed] of pain at the base of her thumb on the palmar side." Id.  Futher, the record indicates that Dr. Barami referred Plaintiff to an orthopedic surgeon for "further evaluation." Id.

_____

[4](...continued)
does not appear in the record.  (Tr. 200).

[5]  This letter references the hearing date of March 2, 2005, which could have caused the ALJ to mistakenly have written that the letter was dated on March 2, 2005.

The ALJ concluded that Plaintiff's testimony regarding her continuing problems with her right hand was contrary to the medical records because the medical records indicated "significant improvement" and "normal."  (Tr. 23).  As discussed above, however, the medical records did not contain the word "normal" and the medical report to which the ALJ apparently refers does not indicate "significant improvement."  To the contrary, that medical report indicates that Plaintiff continued to have problems with her right hand after the surgery.   As this case is being remanded for consideration of Plaintiff's left hand impairment, the undersigned instructs the ALJ on remand to reevaluate the evidence regarding Plaintiff's right hand post-surgery and to make specific findings regarding any limitations.

> **2.**     **Whether the ALJ erred in failing to credit Plaintiff's claim of dizziness as a significant limitation.**

Plaintiff next argues the ALJ improperly failed to credit Plaintiff's claim of dizziness.  (Doc. 11, pp. 15-17).  Plaintiff's argument is based largely on evidence that was submitted to the Appeals Council and which was not submitted to the ALJ prior to the time the ALJ issued the decision.  (Doc. 11, pp. 16-17).  As such, the ALJ could not have used this evidence when determining the extent of Plaintiff's dizziness.  In the next section, the undersigned will consider whether this evidence should be considered by the ALJ on remand.

**3.    Whether the Appeals Council erred in failing to remand the case.**

Plaintiff claims the Appeals Council (AC) erred in failing to remand the case to the ALJ for reconsideration after Plaintiff submitted new evidence to the AC. (Doc. 11, pp. 17-19).   The Eleventh Circuit has determined that before a remand is warranted based on newly submitted evidence, the claimant must establish that (1) the evidence is new and noncumulative, (2) the evidence is material (i.e., relevant and probative so that there is a reasonable possibility that it would change the administrative result), and (3) there is good cause for the failure to submit the evidence at the administrative level. Falge v. Apfel, 150 F.3d  1323 (citing Cannon v. Bowen, 858 F.2d 1541 (11th Cir. 1988)).

The evidence submitted by Plaintiff to the Appeals Council consists of medical records from Dr. Gadja from December 9, 2004 through August 11, 2005 as well as a treating source mental health report dated September 9, 2005. (Tr. 286-97).  The ALJ issued the decision on June 23, 2005 and Plaintiff submitted these records to the Appeals Council on October 7, 2005.  (Tr. 26, 286).

It is a close call whether the evidence submitted to the AC meets the test for remand based on new evidence.  Regarding the first prong of the test, the medical records seem to be new and noncumulative.   On March 17, 2005, Plaintiff reported that she fell down two days earlier because she lost her balance.  (Tr. 292).  The record dated July 28, 2005 states that Plaintiff was following up on a hospitalization two weeks earlier due to episodes of syncope.  (Tr. 290). Plaintiff was diagnosed with "dizziness/vertigo" and an EEG was ordered.  Id.  These particular portions of the

medical records are new and noncumulative.  The only evidence of dizziness in the medical records that was submitted to the ALJ prior to his decision stated that Plaintiff complained of dizziness and felt like the room was spinning when she stood up.  (Tr. 210).  In the newly submitted medical records, however, there was evidence of Plaintiff falling due to dizziness and being hospitalized due to syncope.  (Tr. 292, 290).  Further, the newly submitted evidence indicates that Plaintiff continued to have problems with both her left and her right hand as of January 31, 2005.  (Tr. 294).  For these reasons, the medical records submitted to the AC are new and noncumulative.

The second prong considers whether the new evidence is material such that there is a reasonable possibility that it would change the outcome.  The ALJ seemed to discredit Plaintiff's claim of dizziness because "there is no evidence that she ever sought medical treatment for falling and no medical evidence that she complained of or reported losing her balance and falling."  (Tr. 23).  The newly submitted evidence, however, demonstrates that Plaintiff reported falling because she lost her balance and that Plaintiff was hospitalized due to syncope.  (Tr. 292, 290).  The ALJ's decision seems to indicate that the presence of this type of evidence would change the outcome.  Thus, the evidence regarding Plaintiff's claim of dizziness is material.

The third prong -- whether good cause exists for having failed to submit the evidence to the ALJ -- is questionable because some of the evidence Plaintiff submitted to the AC is dated more than six months prior to the date of the ALJ's decision.  Obviously, the records dated either shortly before or anytime after the date of the ALJ's decision could not have been submitted to the ALJ; thus, with respect to these records,

good cause exists for Plaintiff's failure to submit them to the ALJ.  Some of the records, however, were dated up to six months before the ALJ issued the decision and Plaintiff offers no reason for failing to submit those records to the ALJ before the ALJ's decision was issued.  If this case were being remanded on this issue alone, the Court would need to determine whether good cause exists for Plaintiff's failure to submit the medical records dated as far back as six months prior to the date of the ALJ's decision. However, because this case is being remanded on other grounds, it is unnecessary for this Court to decide this point.   Although it is questionable whether the Plaintiff has met the requirements for remand based on newly submitted evidence, the Court is remanding this case on other grounds and the ALJ is instructed, on remand, to consider all of the evidence Plaintiff submitted to the AC when evaluating Plaintiff's impairments, including Plaintiff's dizziness.

## IV.    CONCLUSION

For the foregoing reasons, the Commissioner's decision is hereby **REVERSED** and **REMANDED** pursuant to sentence four, 42 U.S.C. 405(g).  On remand, the ALJ shall evaluate Plaintiff's left hand impairment, both individually and in combination with her other impairments, especially the right hand CTS, and make specific findings as to her limitations related to her left hand.  The ALJ shall also reevaluate the evidence regarding Plaintiff's right hand post-surgery and make specific findings regarding any limitations related to her right hand.  Finally, in evaluating Plaintiff's impairments in her left and right hand and her dizziness, the ALJ shall consider all of the evidence Plaintiff

submitted to the AC in addition to the evidence in the record.  The Clerk of the Court is

directed to enter judgment consistent with this opinion and, thereafter, to close the file.

　　　　**DONE AND ORDERED** at Jacksonville, Florida, this __5th__ day of December,

2006.


_Monte C. Richardson_

　　　　　　　　　MONTE C. RICHARDSON
　　　　　　　　　UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record